1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **PATRICIA SALAZAR,** | ) **NO. CV 14-1385 KLS** |
| **Plaintiff,** | ) |
| | ) |
| **v.** | ) **MEMORANDUM OPINION AND ORDER** |
| | ) |
| **CAROLYN W. COLVIN**, | ) |
| **Acting Social Security Commissioner,** | ) |
| **Defendant.** | ) |
| _____ | ) |

## INTRODUCTION

On August 29, 2014, Plaintiff Patricia Salazar filed a Complaint seeking review of the Social Security Commissioner's decision denying her application for Disability Insurance ("DI") benefits (pursuant to Title II of the Social Security Act) and Supplemental Security Income ("SSI") benefits (pursuant to Title XVI). Defendant filed an Answer to the Complaint on March 27, 2015. On August 14, 2015, the parties filed a "Joint Stipulation" ("JS"). The matter is now under submission and ready for decision.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

Plaintiff first filed an application for Disability Insurance benefits (pursuant to Title II) on June 24, 2004, alleging a disability onset date of June 1, 2003.  (*See* Volume 1 of 2, Administrative Record ["1AR"] at 53-55.)[1]  Plaintiff was born on March 20, 1975, and, at the time of her alleged disability onset date, she was 28 years old.  (*See, e.g.,* 1AR at 73, 389.)

A first hearing on that first application was held before an Administrative Law Judge ("ALJ"), Barry S. Brown (sometimes hereinafter "first ALJ"), on February 21, 2006.  (1AR at 354-71.)   On July 10, 2006, the first ALJ denied that application at steps four and five of the five-step sequential evaluation, finding that Plaintiff could still perform her past relevant work ("PRW") as a theater manager or a "sales attendant"; and also finding that, even if Plaintiff could not perform her PRW, Plaintiff could still perform other qualifying work based on the Medical-Vocational Guidelines at 20 C.F.R. Part 404, Subpart P, Appendix 2.  (*See* 1AR at 13-23.)

On December 17, 2007, Plaintiff filed her first Complaint in this District Court, seeking relief from the first ALJ's decision.  (*See* case no. 07-8173-MAN, Docket No. 1.)  On August 17, 2009, the assigned Magistrate Judge reversed the first ALJ's July 10, 2006 decision, finding that the ALJ's assessment of Plaintiff's residual functional capacity ("RFC") was not supported by "substantial evidence," and remanded the case to the Agency for further proceedings.  (*See id.,* Docket Nos. 20, 21.)

---

[1]   The Court notes that Defendant has apparently lodged two copies of the Administrative Record ("AR"); that is, one copy of the two-volume AR, and a second, identical copy of the two-volume AR. Volume 1 of the AR contains pages 1 through 734; and Volume 2 contains pages 735 through 1,463. The Court will refer to Volume 1 as "1AR" and Volume 2 as "2AR."

On September 19, 2009, the Social Security Appeals Council, after reviewing the District Court's remand Order and the current state of Plaintiff's file, noted that Plaintiff had filed subsequent claims for DI benefits and for SSI benefits on March 12, 2008.  (*See* 1AR 394-96.)   The Appeals Council directed that these claims be "associated," and remanded the case to a different, second ALJ, Helen E. Hesse (sometimes hereinafter "second ALJ"), for further consideration.  (*See* 1AR 375-76.)

A second hearing was held before the new second ALJ on April 4, 2011.  (1AR at 376, 437-68.)   On July 19, 2011, the ALJ issued a decision that was "partially favorable," finding that Plaintiff had been disabled since March 1, 2008, but not prior thereto, and awarding SSI benefits, which Plaintiff began to receive thereafter.  (*See* 1AR at 376, 471-85.)   However, the ALJ found that, since Plaintiff's "last insured date" for DI Title II benefits purposes was December 31, 2006, Plaintiff was not entitled to DI benefits since she did not become disabled until March 1, 2008.  (*See id.*)

Plaintiff appealed to the Social Security Appeals Council; and on September 17, 2013, the Appeals Council affirmed the part of the second ALJ's decision which found that Plaintiff was disabled as of March 1, 2008; but the Appeals Council remanded the case to that same second ALJ for further consideration on the issues of whether Plaintiff had been disabled on or after June 1, 2003 (her alleged disability onset date) and before December 31, 2006 (her "last insured" DI benefits date), and whether Plaintiff was eligible for SSI benefits from June 1, 2003 to February 29, 2008 (*i.e.,* the day before March 1, 2008, when it was determined that Plaintiff was disabled and eligible for SSI benefits).

A third hearing was conducted on March 25, 2014 before the second ALJ (*i.e.,* the same ALJ who presided at the second hearing and wrote the opinion following that

second hearing).  (*See* 2AR 1439-63.)  A Vocational Expert ("VE"), a Medical Expert, and a Psychological Expert, Dr. Arnold Ostrow, testified at that third hearing; and Plaintiff's attorney made a closing statement.  (*See id.*)  On June 20, 2014, the ALJ issued an order denying Plaintiff's request for further benefits.  (*See* 1AR 372-92.)

As noted, Plaintiff filed the instant Complaint in this District Court on August 29, 2014, seeking either an immediate award of DI benefits and SSI benefits from June 1, 2003, Plaintiff's alleged onset of disability, or, in the alternative, seeking a third remand (*i.e.,* following the first remand from this District Court and the second remand from the Appeals Council) to the Agency for further proceedings.  (*See, e.g.,* JS at 16-17 and n.4.)

## SUMMARY OF ADMINISTRATIVE DECISION

The second ALJ's most recent opinion began by noting that remand from the Appeals Council concerned "[t]he general issue of whether the Plaintiff was disabled . . . at any time from June 1, 2003 (her alleged onset date) to March 1, 2008 (the date she was previously found disabled)."  (1AR at 376.)  The ALJ also noted that, in order to be eligible for DI benefits, Plaintiff had to show that she was disabled before December 31, 2006, her "last insured date" for DI benefits.  (*See id.*)

The ALJ went on to find that Plaintiff suffered from severe impairments of morbid obesity; a torn medial meniscus; obstructive sleep apnea; edema of the lower extremities bilaterally; mild degenerative disc disease of the lumbosacral spine; and an unspecified depressive disorder.  (1AR at 381.)  The ALJ classified Plaintiff as a "younger individual" (that is, between 18 and 44 years old) on her alleged onset date, June 1, 2003; and found that she possessed at least a high school education and was able to communicate in English; and treated the issue of "transferability of skills" as

1    immaterial.  (1AR at 389.)  The ALJ found that, from June 1, 2003 until March 1,
2    2008, Plaintiff had the RFC to perform sedentary work with certain restrictions,
3    including that "she could not have [] any contact with the public" and "she could
4    engage in tasks requiring teamwork on an occasional basis only."  (1AR at 382.)

6        However, the ALJ found insufficient evidence in the record to support the
7    opinion of Plaintiff's treating physician, Dr. Tenzing Wangyal, that Plaintiff would be
8    absent from work three (3) days a month.  (1AR at 384.)  The ALJ stated that because
9    "Dr. Wangyal's opinion that the claimant would be absent from work three days per
10   month is *not* well-supported and is *not* consistent with the other substantial evidence
11   of record, it cannot appropriately be given any weight." (1AR at 384; italics in
12   original.)  Rather, the ALJ credited the opinion of a non-treating psychological expert,
13   Dr. Arnold Ostrow, whom the ALJ said testified at the third hearing that there was "no
14   clear basis" for Dr. Wangyal's three-missed-days finding, and who opined that
15   Dr. Wangyal's examination "does not reflect how he [Dr. Wangyal] arrived at his
16   conclusion of three [sic]."  (*See* 1AR at 384; 2AR at 1448-49.)

18       Accordingly, the ALJ credited Dr. Ostrow's opinion that Plaintiff would only
19   miss up to two days of work per month.[2]  (1AR at 384.)  However, the ALJ noted that
20   "neither he [Dr. Ostrow] nor Dr. Wangyal were able to provide 'a specific, objective
21   opinion' on this issue."  (1AR at 384.)   In sum, the ALJ found, based on testimony
22   from the VE, that Plaintiff retained the RFC to work as a "dresser" or "tube operator";
23   and therefore the ALJ found that Plaintiff was not disabled from June 1, 2003 through

---

[2] The ALJ also discounted Plaintiff's testimony that she was incontinent and could not work because she would have an "accident" four or five times during an eight-hour day.  (1AR at 385.)  Specifically, the ALJ discredited Plaintiff's testimony that she did not wear adult diapers because "she could not find them." (*Id.*) However, the record shows that at the 2006 hearing, Plaintiff weighed 490 pounds and suffered from morbid obesity. (1AR at 356.)  Further, Plaintiff testified in a previous hearing before ALJ Barry S. Brown, that she did not shop by herself, did not do housework at home, needed assistance to dress herself, and did not take medication for daily headaches because her insurance did not cover the medication.  (1 AR at 367, 385.)  The ALJ's assessment of Plaintiff's credibility, however, is not a disputed issue in this appeal. (See Joint Stip. at 6 (ECF Doc. No. 25).)

February 29, 2008, and denied Plaintiff at step five of the five-step sequential evaluation.  (1AR at 389-91.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole.  *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007).  "Substantial evidence is 'more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014) (internal citations omitted).  "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."  *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless must review the record as a whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion."  *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (internal quotation marks and citation omitted); *Desrosiers v. Sec'y of Health and Hum. Servs.*, 846 F.2d 573, 576 (9th Cir. 1988).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation.  *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely."  *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).  The Court will not

reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'"  *Brown-Hunter v. Colvin,* 798 F.3d 749, 754 (9th Cir. 2015) (internal citations omitted).

## DISCUSSION

Plaintiff raises one issue in the Joint Stipulation:  Whether the ALJ articulated legally sufficient reasons to reject the opinion of treating physician Dr. Wangyal, that Plaintiff would miss three days of work per month, in favor of the non-examining physician Dr. Ostrow, that Plaintiff would only miss two days of work per month.  (*See* JS at 6 *et seq.*)

1.   <u>Further Background, Physicians' Opinions</u>

The first ALJ, who presided over Plaintiff's first hearing, found that Plaintiff's earnings record showed that Plaintiff met the insured status of the Social Security Act for DI benefits through December 31, 2006.  (1AR at 15, 17.)  Accordingly, Plaintiff had to establish disability on or before that date by showing that she was unable to work for a period that lasted or could be expected to last for a continuous period of not less than 12 months from some time before that December 31, 2006 date.  (*See* 1AR at 15.)  As noted, that first ALJ found that Plaintiff could perform her PRW as a "theater manager" or "sales attendant," and that she could also do other qualifying jobs in the national economy, and therefore she was not disabled at any time.  (*See* 1AR at 21-23.)

Contrary to the first ALJ's finding, the second ALJ found that Plaintiff was disabled as of March 1, 2008.  (*See* 1AR at 479.)  The ALJ opined that Plaintiff had fallen and injured her left knee in March 2008 and, as a result, Plaintiff's condition

now equaled the Listed Impairment set forth at Listing 1.02A of 20 C.F.R. Part 404, Subpart P, Appendix 1, which concerns the muscoskeletal system and, in particular, major dysfunction of a joint; and that Plaintiff was therefore disabled as of March 1, 2008. (*See* 1AR at 484.)  However, the ALJ found that since Plaintiff was disabled from March 1, 2008, and was not disabled at the time of her "last insured" date of December 31, 2006, Plaintiff was not eligible for the DI Title II benefits that Plaintiff sought from June 1, 2003, her alleged onset date.  (*See* 1AR at 484-85.)

After that second decision (*i.e.,* the first decision by the second ALJ), the Appeals Council assumed jurisdiction of the case, and affirmed that part of the decision that found Plaintiff was disabled as of March 1, 2008, but remanded the case for further consideration of the issue of disability prior to that March 1, 2008 date. (*See* 1AR at 376.)[3]

The first opinion from the first ALJ does not explicitly refer to Dr. Wangyal by name; but that opinion does reference "[r]ecords submitted from the Talbert Medical Group," which is apparently where Dr. Wangyal worked, and where Dr. Wangyal and

---

[3] The second ALJ's second opinion discussed, at some length, the second ALJ's theory that the Appeals Council incorrectly believed that the first ALJ had written the second opinion in Plaintiff's case, and that the Appeals Council incorrectly believed that they were remanding Plaintiff's case to the first ALJ.  (*See* 1AR at 378-80.)  The ALJ theorized that the Appeals Council had "reviewed the wrong decision," and stated that "[t]he Appeals Council's statement in this regard [] suggests [that] they inadvertently reviewed Judge Brown's [*i.e.,* the first ALJ's] initial decision and erroneously through it was the second decision and that Judge Brown had heard the case twice."  (*See* 1ART at 378.)  In particular, the second ALJ disputed the Appeals Council's remand, stating that "the undersigned notes that while the Appeals Council stated Dr. Wangyal's opinion had not been assessed properly, a review of the undersigned's July 19, 2011 decision shows that his [*i.e.,* Dr. Wangyal's] opinion *was* assessed properly and, moreover, that specific reasons and evidence for rejecting his opinion that the claimant would be absent from work at least three days a month were provided."  (1AR at 379.)  Since these observations from the second ALJ are not material to this Court's analysis, it is not necessary to resolve any such alleged discrepancies.

other physicians treated Plaintiff; and those records are from March 2003 to January 2006. (*See* 1AR at 19, citing Exhibits 8F and 11F.)  However, this Court notes that in the Order from this District Court remanding the case, the District Court refers to "plaintiff's treating physician, Tenzin Wangyal, M.D." (*See* Case no. 07-8173-MAN, Docket No. 20 at 7.)  The second opinion, written by the second ALJ after the District Court's remand, refers to Dr. Wangyal, but does not specifically describe him as a "treating physician." (*See, e.g.,* 1AR at 481.)  The third opinion (*i.e.,* the second opinion from the second ALJ) again refers to Dr. Wangyal, but again does not specifically describe him as a "treating physician," although the opinion notes that, in some respects, the ALJ gives Dr. Wangyal's opinion "controlling weight." (*See* 1AR at 384.)

The Court's review of the record reveals that at the third hearing, as the ALJ was examining Dr. Ostrow, the following colloquy occurred:

> ALJ:   "[Dr. Wangyal] stated [Plaintiff] would need to be absent from work at least three days a month.  Do you agree with that?  I noted in the file he's not her treating physician.  It's Dr. Sturgess (phonetic) is the [treating] physician, but they both work for Talbot [sic] Medical Center.  So I don't know what he was relying on for that."
>
> Dr. Ostrow:  "Yeah, that's what he – the only issue I saw . . . it's filled out like that, Your Honor.  But I don't know on what basis he places that.  The three day – I would say – looking at the records, I'd say probably two days, but I don't know how one could be objective.  The frequency of missing work is not well documented in the records that I saw. Knowing what her medical impairments are, I would just assume that that would be a reasonable number."

1    (2AR at 1449; ellipsis added.)[4]

2

3        Plaintiff's attorney then examined Dr. Ostrow, and the following colloquy

4    occurred:

5                P's atty:  "So, any more with respect to limitations in respect to being

6                absent limiting more kind of – you think two, Dr. [Wangyal] says three."

7                Dr. Ostrow:  "I think neither one of us could really give you a specific,

8                objective opinion."

9                P's atty: "Right."

10               Dr. Ostrow:  "And looking at their – since I only – he examined her.

11               However, his examination did not reflect how he arrived at that

12               conclusion of three, so I don't know what to say."

13               P's atty:  "Right.  I mean, the District Court disagrees with you.  You

14               know, they felt that the opinion was supported by objective evidence

15               inside of the record.  But as a training [sic] doctor who sees someone over

16               a period of time or who has access to a chart and knows the patient

17               through examination and interview of her charts, you know, could – but

18               I'm assuming you've rendered an opinion similar to that?"

19               Dr. Ostrow:  "Yes.  *I agree that the treating physician is in a much*

20               *better position than I am.*  It's just that he didn't document it as

21               appropriately as I would have liked in order for me to comment on it."

22    (2AR at 1449-50 (emphasis added).)

23

24   _____

25   [4] While the second ALJ apparently questioned at the third hearing whether Dr. Wangyal was, in fact,
     a "treating" physician, and the ALJ did not specifically find that Dr. Wangyal was a treating
26   physician or refer to him as a treating physician in her second opinion, this Court will not second-
     guess the earlier determination of the reviewing Magistrate Judge that Dr. Wangyal was, in fact, a
27   treating physician, or revisit any issue about Dr. Wangyal's status.  (*See* Case no. 07-8173-MAN,
     Docket No. 20 at 7.)

28

The second ALJ, in the third opinion, stated as follows:

> [T]he fact that the majority of Dr. Wangyal's opinion is well-supported and not inconsistent with the other evidence and has therefore been given controlling weight does *not* dictate that Dr. Wangyal's opinion that the claims would be absent from work three days per month must also be adopted.  Furthermore, as Dr. Wangyal's opinion that the claimant would be absent from work three days per month is *not* well-supported and is *not* consistent with the other substantial evidence of record, it cannot appropriately be given any weight.  In this regard, the undersigned noted that upon direct questioning on this matter, Dr. Ostrow testified there is no clear basis for this aspect of Dr. Wangyal's opinion and that Dr. Wangyal's examination "does not reflect how he arrived at his conclusion of three."   He further noted the claimant's frequency of missing work is not well-documented in the record and that there is no reason to believe she would miss more than two days per month.  Moreover, he testified that neither he nor Dr. Wangyal were able to provide "a specific, objective opinion" on this issue.

(1AR at 384; italics in original.)


1.   <u>Applicable Federal Law Regarding Physicians' Opinions</u>


"In disability benefits cases . . . physicians may render medical, clinical opinions, or they may render opinions on the ultimate issue of disability- the claimant's ability to perform work."  *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted.)  The Code of Federal Regulations, at 20 C.F.R. § 404.1527, entitled "Evaluating opinion evidence," provides that a treating physician's opinion will generally be given more weight, since treating sources are "likely to be the medical professionals most able to provide a detailed, longitudinal picture" of a

claimant's medical impairments. *See* 20 C.F.R. § 404.1527(c)(2). Where a treating source's opinion on the nature and severity of a claimant's impairment "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." *Id.* "When we do not give the treating source's opinion controlling weight, we apply the factors listed in paragraphs [20 C.F.R. § 404.1527] (c)(2)(i) and (c)(2)(ii) of this section, as well as the factors in paragraphs (c)(3) through (c)(6) of this section in determining the weight to give the opinion"; and "[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." 20 C.F.R. § 404.1527(c)(2). The factors detailed at 20 C.F.R. § 404.1572(c)(2) *et seq.* are: (1) length of the treatment relationship and the frequency of examination; (2) nature and extent of the treatment relationship; (3) supportability, that is "[t]he more a medical source presents relevant evidence to support an opinion, particularly medical signs and laboratory findings, the more weight we will give that opinion"; (4) consistency; (5) specialization, that is, "[w]e generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist"; and (6) "other factors," which "tend to support or contradict the opinion." *See* 20 C.F.R. § 404.1527(c)(2)(i) to (c)(6).

Social Security Ruling 96-2p states that "[c]ontrolling weight may not be given to a treating source's medical opinion unless the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques." However, the ruling also states that "[i]n many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight." *Id.*

12

The Ninth Circuit has long held that, where an ALJ rejects a treating physician's opinion in favor of a non-examining physician, the ALJ must provide "specific and legitimate reasons" supported by "substantial evidence" in the record, for doing so. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995), as amended (Apr. 9, 1996). The Ninth Circuit has also held that "clear and convincing" reasons are required to reject the treating doctor's ultimate conclusions. *See id.* Furthermore, the opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician. *Lester,* 81 F.3d at 831 (citation omitted). In rejecting the opinion of a treating physician in favor of a non-examining physician, an ALJ may not rely on the non-examining physician's testimony alone; a non-examining physician's opinion, "with nothing more" does not constitute "substantial evidence." *See Andrews v. Shalala,* 53 F.3d 1035, 1042 (9th Cir. 1995). Rather, other evidence, such as laboratory test results, contrary reports from other examining physicians, or testimony from the claimant that conflicts with the treating physician's opinion, will be necessary for the ALJ to credit the non-examining physician's opinion over the treating physician's. *See Lester,* 81 F.3d at 831.

2.   Analysis

In light of the foregoing authorities, the ALJ's rejection of treating physician Dr. Wangyal's opinion, that Plaintiff would miss three days of work per month, in favor of the non-examining physician Dr. Ostrow's opinion, that Plaintiff would miss no more than two days of work per month, is not supported by substantial evidence.

First, while Dr. Ostrow criticized Dr. Wangyal's opinion about missing work for not being "well documented," he also states that "I don't know how one could be objective," and he states that "looking at the record, I'd say probably two days." (*See*

2AR at 1449.)  Dr. Ostrow testified that "I think neither one of us could really give you a specific, objective opinion." (*See* 2AR at 1449.)  Logically, if Dr. Ostrow finds Dr. Wangyal's opinion about missing three days of work a month inadequately supported by the record, then Dr. Ostrow's own opinion about missing two days of work a month must also be inadequately supported, since his opinion as a non-examining physician is based solely on his review of the record that includes the very same medical records on which the treating physician based his opinions.  The ALJ maintains that, because Dr. Wangyal's opinion "is not well-supported and is not consistent with the other substantial evidence of record, it cannot appropriately be given *any* weight" (italic added); and yet the ALJ gives the opinion of Dr. Ostrow, which logically can be no more "supported" than Dr. Wangyal's opinion, enough weight to reject Dr. Wangyal's opinion.

Second, the Court's own review of the records reveals that the ALJ's determination that Dr. Wangyal's opinion is unsupported is itself questionable. Dr. Wangyal's opinion that Plaintiff would be absent from work "about three times a month" is specifically set forth at 1AR at 257; and that opinion is contained in a seven-page "Physical Residual Functional Capacity Questionnaire," dated January 19, 2006, wherein Dr. Wangyal answers a number of questions about Plaintiff's RFC. (*See* 1AR at 252-58.)  That Questionnaire purports to relate "clinical findings" about Plaintiff's condition; and it is apparent that many of the answers are based on prior tests and findings. (*See* 1AR at 252-58.)  The Questionnaire attests that the "earliest date that the description of symptoms *and limitations* in this Questionnaire applies" is March 2003. (*See* 1AR at 258; italics in original.)  Other records from the Talbert Medical Group reflect that Plaintiff had numerous treatments for various maladies, including "morbid obesity" throughout 2003 and 2004 (*see, e.g.,* 1AR at 177-250); and those other records are consistent with the Dr. Wangyal's findings and opinions in the RFC Questionnaire.

Given the longitudinal history of Dr. Wangyal's and the Talbert Medical Group's treatment of Plaintiff over a number of years, the Court finds that Dr. Wangyal's opinion that Plaintiff would miss up to three days of work per month is adequately supported by the record.   Accordingly, since the non-examining Dr. Ostrow's opinion is supported by those same records, Dr. Ostrow's opinion stands alone and therefore cannot constitute "substantial evidence" on which the ALJ may rely to reject Dr. Wangyal's opinion. *See Lester,* 81 F.3d at 831; *Andrews*, 53 F.3d at 1042.

### 2.   Credit-As-True and Award Benefits or Remand for Further Proceedings

Having found that the ALJ's rejection of Dr. Wangyal's opinion is not supported by substantial evidence, the remaining questions are whether Dr. Wangyal's opinion that Plaintiff would miss up to three days of work a month should be credited as true; and, if so, whether an immediate award of benefits should be ordered.   Plaintiff also argues that another, third remand (for a possible fourth hearing) would not be proper at this point because the Commissioner should not get "endless opportunities to get it right"; and because "the delay [here] in repeated remands has become unconscionable"; and because the Agency has displayed "obduracy" in complying with the law of the case. (*See* JS at 8-9, citing, *inter alia, Seavy v. Barnhart,* 276 F.3d 1, 13 (1st Cir. 2001); *Miller v. Chater,* 99 F.3d 972, 978 (10th Cir. 1996); and *Wilder v. Apfel,* 153 F.3d 799, 804 (7th Cir. 1998).)

The decision whether to remand a case for additional evidence for an award of benefits is within the court's discretion.   *Reddick v. Chater*, 157 F.3d 715, 728 (9th Cir. 1998); *Swenson v. Sullivan*, 876 F.2d 683, 689 (9th Cir. 1989).   "If additional proceedings can remedy defects in the original administrative proceedings, a social security case should be remanded.   Where, however, a rehearing would simply delay

receipt of benefits, reversal [and an award of benefits] is appropriate." *Lewin v. Schweiker*, 654 F.2d 631, 635 (9th Cir. 1981).

The Ninth Circuit has held that where, as here, "the Commissioner fails to provide adequate reasons for rejecting the opinion of a treating or examining physician, we credit that opinion 'as a matter of law.'" *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995) (quoting *Hammock v. Bowen*, 879 F.2d 489, 502 (9th Cir. 1989)). Under the "credit-as-true rule," a reviewing federal court may remand with instructions to calculate and award benefits if "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence . . . ; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Mendoza v. Colvin*, ___ F. A'ppx ___, No. 13-16325, 2015 WL 6437337, at *2 (9th Cir. Oct. 23, 2015) (unpublished) (quoting *Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014)).

In this case, the requirements of the Ninth Circuit's credit-as-true rule have been satisfied. The VE testified at the third hearing that, if Plaintiff missed three days of work per month, Plaintiff could not perform her PRW or any other work, and therefore a finding of disability would be warranted. (*See* 2AR at 1460-61.) As discussed above, the ALJ's discrediting of Dr. Wangyal's opinion was not supported by clear and convincing reasons, and it does not appear that the record requires any further development on these points. Further, as this case had already been remanded twice, and the record is fully developed, no useful purpose would be served by further proceedings.[5] See *Garrison*, 759 F.3d at 1010 (concluding ALJ erred in rejecting

---

[5] Indeed, in *Garrison*, the Ninth Circuit pointed to several decisions holding that a district court may abuse its discretion in remanding for further proceedings when all three requirements for applying the credit-as-true doctrine are met. Garrison, 759 F.3d at 1020 (citing, among others, *Lingenfelter*, 504 F.3d at 1041; *Orn,* 495 F.3d at 629; *McCartey v. Massanari*, 298 F.3d 1076-77 (9th Cir. 2002); and *Smolen v. Chater*, 80 F.3d 1273, 1292 (9th Cir. 1996).)

16

treating physicians' medical opinions).  Since Dr. Wangyal's opinion concerns records from 2003 and 2004, and establishes that Plaintiff was disabled prior to December 31, 2006, the Court knows of no outstanding issues that must to be resolved before a determination of disability can be made.  An award of benefits from the period beginning on Plaintiff's disability onset date, June 1, 2003, appears warranted. Accordingly, this case should be remanded to the ALJ for a calculation of an appropriate award of DI and/or SSI benefits, as warranted.[6]

---

[6] The Court recognizes that Plaintiff is receiving SSI payments based on a finding that she was disabled as of March 1, 2008.  (Joint Stip. at 3; and AR at 392.)  To prevent a windfall to Plaintiff, the award of retroactive disability benefits consistent with this Order, for the period June 1, 2003 to the present, will be subject to an offset for the SSI benefits Plaintiff has received from March 1, 2008 to the present.  *See* 42 U.S.C. § 1302a-6, amended by Publ.L.No. 98-369, 98 Stat. 1132 (1984).

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## CONCLUSION

For the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for a calculation and award of DI benefits and SSI benefits as warranted and consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for Plaintiff and for Defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE:  November 10, 2015

KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE

18